950 P.2d 1201

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Clemente B. JUMILA, Jr., aka "Junior," Defendant–Appellant**

No. 19898.

Supreme Court of Hawai'i.

Feb. 3, 1998.

James Biven, on the briefs, Kailua Kona, for defendant-appellant.

Melvin H. Fujino, Deputy Prosecuting Attorney (Harold Schwartz, Law Clerk, assisting), on the briefs, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Defendant-appellant Clemente B. Jumila, Jr., appeals the Third Circuit Court's denial of his motion to reduce sentence and correct illegal sentence pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35. For the reasons set forth below, we vacate the circuit court's denial of Jumila's HRPP Rule 35 motion and reverse Jumila's conviction and sentence on the Hawai'i Revised Statutes (HRS) § 134–6(a) charge.

## I. BACKGROUND

In December 1995, Jumila pleaded no contest to charges of murder in the second degree, in violation of HRS § 707–701.5(1)

(1993),[1] and carrying or use of a firearm in the commission of a separate felony, to wit, murder in the second degree, in violation of HRS § 134–6(a) (Supp.1996).[2] The circuit court accepted the no contest pleas and found Jumila guilty of both offenses. Then, at his sentencing hearing, Jumila argued that, if a mandatory minimum term were to be imposed on the second degree murder charge pursuant to HRS § 706–660.1(1)(a) (1993)[3] for the use of a firearm while engaged in the commission of the murder, then HRS § 701–109(1)(a) and (4)(a) (1993) would prohibit the imposition of separate sentences for each offense. Over his objection, the circuit court sentenced Jumila to (1) life imprisonment with the possibility of parole on the second degree murder charge, and (2) an indeterminate term of imprisonment of twenty years on the HRS § 134–6(a) charge. In addition, the circuit court imposed a mandatory minimum term of imprisonment of fifteen years on the second degree murder charge pursuant to HRS § 706–660.1(1)(a). The sentences were to run concurrently.

Jumila thereafter filed a motion, pursuant to HRPP Rule 35, to reduce sentence and correct illegal sentence, which the circuit court denied on May 6, 1996. This timely appeal followed.

1. HRS § 707–701.5 provides in relevant part:
   **Murder in the second degree.** (1) ... [A] person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

2. HRS § 134–6 provides in relevant part:
   **Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.** (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection where the separate felony is:
   (1) A felony otherwise defined by this chapter;
   (2) The felony offense of reckless endangering in the first degree under section 707–713;
   (3) The felony offense of terroristic threatening in the first degree under section 707–716(1)(a), 707–716(1)(b), and 707–716(1)(d); or

## II. DISCUSSION

### A. Analysis

On appeal, Jumila argues that, because he was sentenced to a mandatory minimum term of fifteen years in connection with the second degree murder charge, the charge of carrying or use of a firearm in the commission of a separate felony was an included offense, as defined in HRS § 701–109(4)(a), of murder in the second degree. Thus, Jumila contends that, pursuant to HRS § 701–109(1)(a), which provides that a "defendant may not ... be convicted of more than one offense if ... [o]ne offense is included in the other, as defined in subsection (4) of this section[,]" he should not have received both the twenty year sentence on the HRS § 134–6(a) charge and the life sentence with the fifteen year mandatory minimum term on the second degree murder charge. Accordingly, Jumila urges us to hold that the circuit court erred in denying his motion to reduce sentence and correct illegal sentence.

According to HRS § 701–109(4)(a), one offense is included within another when "it is established by proof of the same or less than all the facts required to establish the

(4) The felony offenses of criminal property damage in the first degree under section 708–820 and criminal property damage in the second degree under section 708–821 and the firearm is the instrument or means by which the property damage is caused.

3. HRS § 706–660.1 provides in relevant part:

   **Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:
   (a) For murder in the second degree and attempted murder in the second degree—up to fifteen years[.]

commission of the [other] offense...." The use of a firearm is a fact that needs to be proven to establish the HRS § 134–6(a) offense; however, the use of a firearm does not need to be proven in order to establish the offense of second degree murder. That Jumila's sentence for second degree murder was enhanced, pursuant to HRS § 706–660.1(1)(a), because of the use of a firearm does not alter that fact. Accordingly, we hold that the offense of use of a firearm in the commission of second degree murder in violation of HRS § 134–6(a) is not an included offense [4] of second degree murder in violation of HRS § 707–701.5(1).

■ Jumila's HRS § 701–109 argument is not, however, without merit. "[B]ecause HRS § 134–6(a) requires the actual commission of an underlying felony," the prosecution "is required to prove all of the conduct, attendant circumstances, and results of conduct that comprise the underlying crime" in order to convict a defendant of violating HRS § 134–6(a). *State v. Israel*, 78 Hawai'i 66, 74–75, 890 P.2d 303, 311–12 (1995). Therefore, by virtue of the statutory definition of HRS § 134–6(a), the felony underlying an HRS § 134–6(a) charge will always be "established by proof of the same or less than all the facts required to establish the commission of the" HRS § 134–6(a) offense. Consequently, the felony underlying an HRS § 134–6(a) offense is, as a matter of law, an included offense of the HRS § 134–6(a) offense.

This analysis is analogous to that set forth in *State v. Vinge*, 81 Hawai'i 309, 318–19, 916 P.2d 1210, 1219–20 (1996), wherein we concluded that the offenses of "theft and attempted theft, regardless of degree, are included offenses of first degree robbery." 81 Hawai'i at 319, 916 P.2d at 1220. In *Vinge*,

we noted that, because robbery in the first degree is defined by HRS § 708–840 (1993) as the commission of certain acts "in the course of committing theft,"

> in order for the prosecution to prove that a defendant committed robbery in the first degree, the prosecution must also prove— as an element of first degree robbery—all the elements of theft or attempted theft. Therefore, because (1) theft is an element of first degree robbery, (2) a defendant cannot commit first degree robbery without committing theft or attempted theft, and (3) attempted theft is an included offense of theft, *see* HRS § 701–109(4)(b), we hold that theft and attempted theft, regardless of degree, are included offenses of first degree robbery.

*Id.*

■ Because the felony underlying an HRS § 134–6(a) offense is an included offense of the HRS § 134–6(a) offense, pursuant to HRS § 701–109(1)(a), Jumila should not have been convicted of both the HRS § 134–6(a) offense and the underlying second degree murder offense.[5] If he should not have been convicted of both offenses, then, of course, he should not have received separate sentences for each offense. Consequently, the circuit court erred in denying Jumila's motion to reduce sentence and correct illegal sentence.

■ In order to remedy the HRS § 701–109 violation, the conviction and sentence for one of the two offenses must be reversed. When a defendant is convicted of an offense and a "lesser" included offense, *see State v. Malufau*, 80 Hawai'i 126, 138, 906 P.2d 612, 624 (1995) (order on motion for reconsideration) (an included offense is "less-

---

4. There is no question that the HRS § 134–6(a) offense was not "an attempt to commit" the second degree murder offense or an offense included therein. *See* HRS § 701–109(4)(b). Similarly, it is evident that the two offense do not differ "only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish" the commission of the HRS § 134–6(a) offense. *See* HRS § 701–109(4)(c). Therefore, the HRS § 134–6(a) offense was not

an included offense of second degree murder under HRS § 701–109(4)(b) or (c).

5. Although Jumila entered pleas of no contest to the second degree murder and HRS § 134–6(a) charges, because he raised the HRS § 701–109 argument at his sentencing hearing, before judgment was entered, and because the prosecution has never contended that Jumila should be precluded from raising the argument, we conclude that Jumila did not waive his HRS § 701–109 rights when he entered his no contest pleas.

er" when "it is an offense of a class and grade lower than the greater offense"), we simply reverse the conviction and sentence for the "lesser" included offense. *See Vinge*, 81 Hawai'i at 324, 916 P.2d at 1223; *see also State v. Reyes*, 5 Haw.App. 651, 659, 706 P.2d 1326, 1331, *reconsideration denied*, 5 Haw. App. 683, 753 P.2d 253 (1985). This solution is fair to the defendant because it remedies the HRS § 701–109 violation, and it is fair to the prosecution and the public because it sustains the conviction of the offense of the highest class and grade of which the defendant was convicted.[6]

In the instant case, however, the included offense is murder in the second degree, an offense of a higher class and grade than HRS § 134–6(a), a class A felony. HRS § 134–6(e). Under these circumstances, where (1) the second degree murder conviction was otherwise valid and (2) the HRS § 701–109 violation can be remedied by reversing the HRS § 134–6(a) conviction and sentence, we believe that it would be manifestly unfair to the prosecution and to the public to reverse the second degree murder conviction simply because it was the included offense. Accord-

ingly, in order to remedy the HRS § 701–109 violation, we reverse Jumila's conviction and sentence on the HRS § 134–6(a) charge.[7] *Cf. State v. Liuafi*, 1 Haw.App. 625, 644, 623 P.2d 1271, 1283 (1981) (where defendant's convictions of both attempted murder and failure to render assistance violated HRS § 701–109(1)(c) because inconsistent findings of fact were required to establish the commission of the offenses, the proper disposition was to vacate the conviction for failure to render assistance).

### B. *Response to Dissent*

The dissent essentially argues that the legislature intended that an individual could be convicted of both an HRS § 134–6(a) offense and the underlying felony offense and that the legislature thereby created an exception to the statutory prohibition set forth in HRS § 701–109 against convictions for both an offense and an offense included therein. *See* dissenting opinion at 7–9, 950 P.2d at 1207–1209.[8] We agree that the legislature could, if it desired, create an exception to the statutory prohibition set forth in HRS § 701–109

---

6. We are mindful of the principles espoused in *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977), and *State v. Kuuku*, 61 Haw. 79, 595 P.2d 291 (1979), wherein this court ruled that:

   [a] denial of [the] rights [to due process and the equal protection of the laws] would ... result ... if a violation of [a] misdemeanor statute ... would invariably and necessarily constitute a violation of [a] felony provision.... Thus, where the same act committed under the same circumstances is punishable either as a felony or a misdemeanor, under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same, a conviction under the felony statute would constitute a violation of the defendant's rights to due process and the equal protection of the laws. [*Modica*], 58 Haw. [at] 250–51, 567 P.2d [at] 421–22 ... (citations omitted). The "*Modica* rule," which applies equally to the possibility of prosecution and conviction under two differently classed felonies (for example, under either a class [A] felony statute or a class C felony statute) ... was expressly reaffirmed in ... *Kuuku*, 61 Haw. [at] 80–81 [ & n. 1], 595 P.2d [at] 293 [ & n. 1]....

   *State v. Hoang*, 86 Hawai'i 48, 51, 947 P.2d 360, 363 (1997); *State v. Arceo*, 84 Hawai'i 1, 22, 928 P.2d 843, 864 (1996) (citing *State v. Aluli*, 78 Hawai'i 317, 324, 893 P.2d 168, 175 (1995)) (Levinson, J., concurring).

   However, because "the elements of proof essential to" a conviction under HRS § 134–6(a) are not "exactly the same" as those "essential" to a conviction under HRS § 707–701.5(1), the interrelationships between the two statutes do not "generate the very evils rendered unlawful by the *Modica* rule." *See Arceo*, 84 Hawai'i at 22, 928 P.2d at 864.

7. Because we are reversing Jumila's conviction and sentence on the HRS § 134–6(a) charge, we need not address Jumila's argument that the double jeopardy clause prohibits the imposition of both a sentence on the HRS § 134–6(a) charge and a mandatory minimum term pursuant to HRS § 706–660.1(1)(a) based on the single use of a firearm.

8. The discussion on pages 7–8, 950 P.2d at pages 1207–1208 of the dissenting opinion expressly sets forth the dissent's interpretation of the legislative intent. Furthermore, to the extent that the dissent contends that HRS § 134–6(a) is a "specific" statute on the subject of included offenses and should be construed as an exception to HRS § 701–109(4)(a), *see* dissenting opinion at 7–8, 950 P.2d at 1208–1209, because the plain language of HRS § 134–6(a) does not in any manner mention included offenses or any exception to the law related thereto, the dissent's contention can only be based on its interpretation of the legislative intent.

against convictions for both an offense and an offense included therein. In our view, however, there is not sufficient basis in the language or legislative history of HRS § 134–6(a) to conclude that the legislature so desired.

We have found no indications in the language of HRS § 134–6(a) or the legislative history preceding its original enactment in 1990 to suggests that the legislature intended that an individual could be convicted of both an HRS § 134–6(a) offense and its underlying felony or that the legislature otherwise intended to create an exception to HRS § 701–109. Moreover, we note that the dissent's interpretation of the legislative intent is based virtually entirely on an isolated sentence that was mere dictum in a single committee report regarding a 1993 amendment to HRS § 134–6(a). *See* dissenting opinion at 7, 950 P.2d at 1207 (citing Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210).[9] In light of the attenuated legislative history in this regard, we must abide by the plain language of HRS §§ 134–6(a) and 701–109, which, as discussed above, prohibits the conviction of a defendant for both an HRS § 134–6(a) offense and its underlying felony.

9. As stated in the cited committee report, the purpose of the bill at issue was only to:
(1) Make it unlawful to knowingly carry or have in a person's immediate control a firearm while engaged in the commission of a separate felony;
(2) Provide that a person shall not be prosecuted under section 134–6(a) where the separate felony involves a possessory gun offense under Chapter 346, the offense of reckless endangering in the first degree under section 707–713, or the offense of terroristic threatening in the first degree except where a public servant is involved—all of which already have enhanced penalties for the use or possession of a firearm; and
(3) Applies the new provisions to convictions occurring after the approval of the Act.

10. The ten class A felonies defined by the HPC are: Manslaughter, HRS § 707–702; Kidnapping, HRS § 707–720; Sexual Assault in the First Degree, HRS § 707–730; Promoting Child Abuse in the First Degree, HRS § 707–750; Extortion with Firearms, Explosives, and Dangerous Weapons, HRS § 707–768; Robbery in the First Degree, HRS § 708–840; Compensation by an Adult of Juveniles for Commission of a Class A or B Felony, HRS § 709–904.5; Promoting a

The dissent further asserts that our holding in the instant case is incorrect because it "effectively nullifies" HRS § 134–6(a). Dissenting opinion at 10, 950 P.2d at 1210. However, as the dissent acknowledges, this alleged statutory nullification would, at most, only apply "as far as murder-related and class A felonies are concerned." *Id.* We do not disagree that the prosecution is likely "simply to stop bringing HRS § 134–6(a) charges" when the underlying felony is a class A felony or murder or attempted murder in any degree, *id.* at 10–11, 950 P.2d at 1210–1211, and that "the prosecution is likely to charge a defendant with an HRS § 134–6(a) violation [only] when the underlying felony is a class B or C felony." *Id.* at 10, 950 P.2d at 1210. However, even assuming that this is true, we do not agree that this "nullifies" HRS § 134–6(a) in a significant manner.

First, we note that there are far more class B and C felonies than murder-related and class A felonies that could be the underlying felonies in HRS § 134–6(a) charges. There are only ten class A felonies that are defined by the Hawai'i Penal Code (HPC).[10] On the other hand, there are approximately twenty class B felonies and well over fifty class C felonies defined in the HPC.[11]

Dangerous Drug in the First Degree, HRS § 712–1241; Promoting a Harmful Drug in the First Degree, HRS § 712–1244; and Commercial Promotion of Marijuana, HRS § 712–1249.4. In addition, Attempt to Commit any Class A Felony, HRS §§ 705–500, –502, is also a class A felony.

Of these, pursuant to our holding in *State v. Ganal,* 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996), because HRS §§ 707–768 and 709–840(1)(b) already include the use of a dangerous instrument or weapon as an element, it is unlikely that the prosecution would charge defendants with an HRS § 134–6(a) violation if the underlying felony were Extortion with Firearms, Explosives, and Dangerous Weapons or Robbery in the First Degree, even if it were not precluded from doing so by HRS § 701–109. We further note that although HRS § 485–21 also defines certain violations of the Uniform Securities Act to be class A felonies, it is unlikely, though theoretically possible, that anyone would be prosecuted for carrying a firearm while committing such an offense.

11. Some of the class B and C felonies defined in the HPC that could be the underlying felonies for HRS § 134–6(a) offenses are: Assault in the First

In addition to the fact that the alleged nullification of HRS § 134–6(a) would, at most, only apply to a relatively small number of murder-related and class A felonies, we note that the effect of any such nullification would be minimal. This is because, even if the prosecution were allowed to convict defendants of both an HRS § 134–6(a) offense and its underlying felony, (1) conviction of an HRS § 134–6(a) offense in addition to an underlying murder-related or class A felony would be unlikely to increase a defendant's sentence due to the fact that there is "a presumptive legislative preference for concurrent sentencing with respect to multiple terms of imprisonment imposed at the same time", *State v. Cornelio*, 84 Hawai'i 476, 493, 935 P.2d 1021, 1038 (1997), and (2) as explained by the dissent, a defendant may not be convicted of an HRS § 134–6(a) violation and receive a mandatory minimum term of imprisonment on the underlying felony pursuant to HRS § 706–660.1. Dissenting opinion at 14, 950 P.2d at 1214. Therefore, in most cases in which an individual commits a murder-related or class A felony with a firearm, one would expect the prosecution to seek imposition of a mandatory minimum term of imprisonment pursuant to HRS § 706–660.1, rather than seek a conviction of an HRS § 134–6(a) offense and attempt to overcome the presumption of concurrent sentencing.

## III. CONCLUSION

For the foregoing reasons, we (1) vacate the circuit court's order denying Jumila's motion to reduce sentence and correct illegal sentence and (2) reverse Jumila's conviction and sentence on the HRS § 134–6(a) charge.

RAMIL, Justice, with whom NAKAYAMA, Justice, joins, dissenting.

Because I disagree with the reasoning applied and the result reached by the majority in this case, I respectfully dissent. I would vacate Jumila's mandatory minimum term

---

Degree, HRS § 707–710; Assault in the Second Degree, HRS § 707–711(1)(a); Terroristic Threatening in the First Degree (against a public servant), HRS § 707–716(1)(c); Unlawful Imprisonment in the First Degree, HRS § 707–721; Custodial Interference in the First Degree, HRS § 707–726; Sexual Assault in the Second Degree, HRS § 707–731; Sexual Assault in the Third Degree, HRS § 707–732; Extortion in the First Degree, HRS § 707–765; Extortion in the Second Degree, HRS § 707–766; Burglary in the Second Degree; HRS § 708–811; Theft in the First Degree, HRS § 708–830.5; Theft in the Second Degree, HRS § 708–831; Theft of Livestock, HRS § 708–835.5; Unauthorized Control of a Propelled Vehicle, HRS § 708–836; Unauthorized Entry into a Motor Vehicle, HRS § 708–836.5; Robbery in the Second Degree, HRS § 708–841; Theft of Credit Cards, HRS § 708–8102(1); Money Laundering, HRS § 708A–3; Escape in the Second Degree, HRS § 710–1021; Intimidating a Correctional Worker, HRS § 710–1031; Intimidating a Witness, HRS § 710–1071; Retaliating Against a Witness, HRS § 710–1072.2; Intimidating a Juror, HRS § 710–1074; Retaliating Against a Juror, HRS § 710–1075.5; Aggravated Harassment by Stalking, HRS § 711–1106.4; Interference with the Operator of a Public Transit Vehicle, HRS § 711–1112; Promoting Prostitution in the First Degree, HRS § 712–1202; Promoting Prostitution in the Second Degree, HRS § 712–1203; Promoting Gambling in the First Degree, HRS § 712–1221; Promoting Gambling Aboard Ships, HRS § 712–1222.5; Promoting a Dangerous Drug in the Second Degree, HRS § 712–1242; Promoting a Dangerous Drug in the Third Degree, HRS § 712–1243; Promoting a Harmful Drug in the Second Degree, HRS § 712–1245; Promoting a Harmful Drug in the Third Degree, HRS § 712–1246; Promoting a Detrimental Drug in the First Degree, HRS § 712–1247; Commercial Promotion of Marijuana in the Second Degree, HRS § 712–1249.5; and Promoting a Controlled Substance in, on, or near Schools or School Vehicles, HRS § 712–1249.6. In addition, Attempt to Commit any Class B or C Felony, HRS § 705–500, –502; Solicitation to Commit any Class A or B Felony, HRS §§ 705–510, –512; and Conspiracy to Commit any Class A, B, or C Felony; HRS §§ 705–520, –526, are graded as class B or C felonies.

The foregoing list is not meant to be exhaustive and, among other things, does not include any class B or C felonies that already include the use of a dangerous instrument or weapon as an element. In addition, the list does not include any of the class B and C felonies that are defined outside the HPC. However, we note that with respect to most of the class B and C felonies that are defined outside the HPC, it is unlikely, though theoretically possible, that anyone would be prosecuted for carrying a firearm while committing such offenses. The few exceptions might be: Forcibly Resisting a Poultry Inspector, HRS § 161–47(d); Intimidating a Person to Execute a Declaration Directing the Withholding or Withdrawing of a Life-sustaining Procedure, HRS § 327D–17; and Intimidating a Person to Execute a Declaration under HRS § 327F–3, HRS § 327F–12(a).

under HRS § 706–660.1 (1993)[1] and remand for resentencing without the mandatory minimum; however, I would affirm his convictions of murder in the second degree, in violation of HRS § 707–701.5 (1993),[2] and carrying or use of a firearm in the commission of a separate felony, in violation of HRS § 134–6(a) (Supp.1996).[3]

## I. *DISCUSSION*

### A. *Whether Second Degree Murder is an Included Offense of Carrying or Use of a Firearm*

Relying on HRS § 701–109(4)(a), the majority holds that "by virtue of the statutory definition of HRS § 134–6(a), the felony underlying an HRS § 134–6(a) charge will always be 'established by proof of the same or less than all the facts required to establish the commission of the' HRS § 134–6(a) offense. Consequently, the felony underlying an HRS § 134–6(a) offense is, as a matter of law, an included offense of the HRS § 134–6(a) offense." Majority op. at 3, 950 P.2d at 1203. Thus, according to the majority, murder in the second degree is an included offense of carrying or use of a firearm in the commission of a separate felony. Inasmuch as a defendant cannot be convicted of both the charged offense and an included offense, the majority reverses Jumila's conviction of the firearms offense. I disagree with the majority's analysis.

I believe that the intent of the legislature in enacting HRS § 134–6(a) was to allow defendants to be convicted of *both* the underlying felony and HRS § 134–6(a). In interpreting statutes, we have held that

> [o]ur primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words

of a statute[,] . . . for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Sato v. Tawata,* 79 Hawai'i 14, 17–18, 897 P.2d 941, 944–45 (1995) (quoting *Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 68–69, 868 P.2d 1193, 1215–16 (Klein, J., dissenting), *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994)) (alterations in original).

In the present case, the legislative history of HRS § 134–6(a) indicates that the legislature intended to permit conviction of both the underlying felony and the separate firearms offense. "[A]n offender who uses a firearm in the commission of a felony can be charged with, *in addition to the underlying offense,* a class A felony under section 134–6(a) and therefore be subject to an enhanced penalty." Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210 (emphasis added). Because the committee report states that the defendant may be charged with a violation of HRS § 134–6(a) *"in addition to* the underlying offense" rather than *"instead of* the underlying offense," it is clear that the legislature intended to allow defendants to be prosecuted both for violating HRS § 134–6(a) and for the underlying felony. If the defendant is convicted of the firearms offense, he is then subject to an additional twenty years imprisonment insofar

---

1. For the text of HRS § 706–660.1 (1993), *see* Majority op. at 2 n. 3, 950 P.2d at 1202 n. 3.

2. For the text of HRS § 707–701.5 (1993), *see* Majority op. at 2 n. 1, 950 P.2d at 1202 n. 1.

3. For the text of HRS § 134–6 (Supp.1996), *see* Majority op. at 2 n. 2, 950 P.2d at 1202 n. 2.

as HRS § 134-6(a) is a class A felony. *See* HRS §§ 134-6(e) and 706-659 (1993 & Supp. 1996). Thus, the overall penalty imposed on the defendant is enhanced when a firearm is carried or used in the commission of the felony.

Nothing in the text of HRS § 134-6(a) contradicts the legislative history. The statute simply states that it is a class A felony for a person to knowingly carry on his or her person or have within the person's immediate control or to intentionally use or threaten to use a firearm while engaged in the commission of a separate felony. Thus, the language in HRS § 134-6(a) does not indicate that a prosecution under that statute is any different than a prosecution for committing any other offense.

Furthermore, Hawai'i case law implicitly supports allowing a defendant to be convicted of both HRS § 134-6(a) and the underlying felony. In *State v. Moore*, 82 Hawai'i 202, 921 P.2d 122 (1996), the defendant was convicted of attempted second degree murder, in violation of HRS §§ 707-701.5 and 705-500, and carrying or use of a firearm in the commission of a separate felony, in violation of HRS § 134-6(a). *Id.* at 205, 921 P.2d at 125. We affirmed both convictions. *Id.* at 225, 921 P.2d at 145. *Cf. State v. Chung*, 75 Haw. 398, 862 P.2d 1063 (1993) (remanding a case for further proceedings on two counts of terroristic threatening and one count of possession or use of a firearm in the commission of a felony). In *State v. Brantley*, 84 Hawai'i 112, 929 P.2d 1362, *appeal decided by*, 84 Hawai'i 126, 929 P.2d 1376 (App.1996), the ICA reviewed a defendant's convictions of place to keep firearm, in violation of HRS § 134-6(b); kidnapping, in violation of HRS § 707-720(1)(d); carrying or use of a firearm in the commission of a separate felony, in violation of HRS § 134-6(a); and second degree murder, in violation of HRS § 707-701.5. *Id.* at 115, 929 P.2d at 1365. The ICA ultimately affirmed the convictions.[4] *Id.* at 125, 126, 929 P.2d at 1375, 1376. Although this court and the ICA could have reversed

the HRS §. 134-6(a) convictions based on the same reasoning applied by the majority in the present case, neither court did so. These cases demonstrate that Hawai'i courts have never interpreted HRS § 134-6(a) as requiring a choice between conviction of the underlying felony or conviction of the firearms offense.

Therefore, in my view, the legislature intended to allow defendants to be convicted of both a violation of HRS § 134-6(a) and the underlying felony. The majority's analysis, however, precludes convicting defendants of both offenses. Thus, the majority's analysis directly conflicts with the intent of the legislature and our prior case law.

The majority relies primarily on HRS § 701-109 for its conclusion that the underlying felony is an included offense of HRS § 134-6(a). HRS § 701-109(4)(a) (1993) provides that an included offense is one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Applying this statute, the majority reasons that the underlying felony is an included offense of HRS § 134-6(a) and then concludes that a defendant cannot be convicted of both offenses. However, as noted *supra*, the legislature's intent in enacting HRS § 134-6(a) was to permit conviction of both offenses. Therefore, in my view, the present case essentially amounts to a conflict between two statutes—HRS § 701-109(4)(a) and HRS § 134-6(a).

We have often held that

where there is a "plainly irreconcilable" conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

*State v. Vallesteros*, 84 Hawai'i 295, 303, 933 P.2d 632, 640, *reconsideration denied*, 84 Ha-

---

4. However, the ICA vacated the defendant's mandatory minimum sentence and remanded the case for resentencing. *Brantley*, 84 Hawai'i at 124-25, 929 P.2d at 1374-75 (citing *Garringer v. State*, 80 Hawai'i 327, 334, 909 P.2d 1142, 1149

(1996) (a mandatory minimum term cannot be imposed if the defendant was an accomplice who did not personally possess, threaten to use, or use a firearm while engaged in the commission of a felony)).

wai'i 496, 936 P.2d 191 (1997). HRS § 701–109(4)(a) is a *general* rule that defines included offenses for most situations. As a *general* proposition, included offenses are those that are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." HRS § 134–6(a), however, is a *specific* statute that applies to a *specific* situation—the carrying or use of a firearm during the commission of a felony. Thus, in the instant case we are presented with a conflict between a general statute and a specific statute. Nevertheless, I believe that it is possible to give effect to both statutes by construing HRS § 134–6(a) as an exception to HRS § 701–109(4)(a). While HRS § 701–109(4)(a) applies to most situations requiring the determination of whether one offense is an included offense of another, in the present case, HRS § 701–109(4)(a) must give way to a specific statute, HRS § 134–6(a), that embodies the intent of the legislature regarding a specific situation.

We have also held that

a rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable because the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality.

*Keliipuleole v. Wilson,* 85 Hawai'i 217, 221–22, 941 P.2d 300, 304–05 (1997) (brackets, internal quotation marks, and citations omitted). The majority's analysis in the present case leads to an absurd result. Carrying or use of a firearm under HRS § 134–6(a) is a class A felony punishable by twenty years imprisonment. *See* HRS §§ 134–6(e) and 706–659 (1993 & Supp.1996). Second degree murder is a felony punishable by life imprisonment with the possibility of parole. *See* HRS §§ 707–701.5(2) and 706–656(2) (1993). Under the majority's analysis, second degree murder is an included offense of HRS § 134–6(a). Thus, a crime punishable by *life* imprisonment is an included offense of a crime punishable by *twenty years* imprisonment. The absurdity of the situation is even more apparent when one considers the jury instruction trial judges would deliver. In part, the instruction would read: "If and only if

you find the defendant not guilty of carrying or use of a firearm in the commission of a separate felony, or you are unable to reach a unanimous verdict as to this offense, then you must determine whether the defendant is guilty or not guilty of the included offense of murder in the second degree." *See* 1 Hawai'i Standard Jury Instructions—Criminal, § 5.03, at 54 (1991); *State v. Pinero,* 70 Haw. 509, 524–25, 778 P.2d 704, 714 (1989) Thus, the jury would be directed first to decide if the defendant is guilty of violating HRS § 134–6(a), and only if it does not find the defendant guilty of that offense is it to consider whether he/she is guilty of murder in the second degree. Assuming that the defendant did, in fact, commit murder with a firearm, a jury following the court's instruction would convict the defendant only of violating HRS § 134–6(a) and never consider whether he/she is guilty of murder in the second degree. The defendant would then be sentenced to a twenty-year term of imprisonment. In contrast, if the defendant had used a knife instead of a firearm, he/she would be subject only to conviction of second degree murder and would be sentenced to life imprisonment with the possibility of parole.

Of course, the prosecution could respond to the majority's approach by initiating some practical measures. The prosecution will probably alter its charging policies in order to take into account the fact that, under the majority's analysis, a defendant can be convicted of the underlying felony or HRS § 134–6(a) but not both. Inasmuch as HRS § 134–6(a) is a class A felony, there would be no reason for the prosecution to charge the defendant with a firearms offense if the underlying felony provides for a penalty that is equal to or greater than the firearms offense. Why should the prosecution bring an HRS § 134–6(a) charge if it would then have to prove additional elements in return for the same or a lesser penalty? It would make more sense for the prosecution simply to charge the defendant with the underlying felony alone. Thus, the practical response of the prosecution would be simply to stop bringing HRS § 134–6(a) charges when the underlying felony is any class A felony, murder in the first degree, murder in the second

degree, attempted murder in the first degree, or attempted murder in the second degree. Consequently, the only time the prosecution is likely to charge a defendant with an HRS § 134-6(a) violation would be when the underlying felony is a class B or C felony. However, we have held that "an interpreting court should not fashion a construction of statutory text that effectively renders the statute a nullity." *Konno v. County of Hawai'i*, 85 Hawai'i 61, 71, 937 P.2d 397, 407 (1997). The majority's approach effectively nullifies the statute, at least as far as murder-related offenses and class A felonies are concerned.

I also disagree with the majority's reliance on *State v. Vinge*, 81 Hawai'i 309, 916 P.2d 1210 (1996). In *Vinge*, we held that theft and attempted theft are included offenses of robbery in the first degree. *Id.* at 319, 916 P.2d at 1220. However, *Vinge* is distinguishable from the present case based on the offenses involved. *Vinge* involved robbery, and robbery is essentially a combination of theft and assault. The Commentary to HRS §§ 708-840 and 708-841 (1993) provides: "Basically, robbery appears to consist of both theft and threatened or actual assault." Thus, it is reasonable to treat theft as an included offense of robbery. However, the present case involves HRS § 134-6(a), carrying or use of a firearm. As discussed *supra*, the legislature intended to allow conviction of both the firearms offense and the underlying felony. Therefore, I believe that *Vinge* is distinguishable from the present case.

For these reasons, I disagree with the majority's analysis and would *not* hold that second degree murder is an included offense of carrying or use of a firearm in the commission of a separate felony.

B. *Whether Double Jeopardy Bars Imposition of a Mandatory Minimum Term*

Instead of deciding this case based on the included offense issue, I would decide the case based on double jeopardy principles. Jumila argues that the constitutional right against double jeopardy prevents imposition of "dual punishment" under both HRS § 706-660.1 and HRS § 134-6(a).

The Fifth Amendment to the United States Constitution provides in relevant part: "No person ... shall be subject for the same offence to be twice put in jeopardy of life or limb[.]" Article I, section 10 of the Hawai'i Constitution provides in relevant part: "No person ... shall be subject for the same offense to be twice put in jeopardy[.]" We have often recognized that double jeopardy is implicated in three types of situations. "Double jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Tuipuapua*, 83 Hawai'i 141, 148, 925 P.2d 311, 318 (1996) (quoting *State v. Toyomura*, 80 Hawai'i 8, 16, 904 P.2d 893, 901 (1995)). *See also North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076-77, 23 L.Ed.2d 656 (1969). It is clear that the present case does not involve successive prosecutions. Rather than being prosecuted in two separate proceedings, Jumila was convicted of two offenses, and subjected to punishment for those convictions, in a single proceeding. Thus, the first two protections described above do not apply to this case. Rather, it is the third protection—multiple punishments—that is implicated here.

Because we are dealing with the multiple punishment aspect of double jeopardy, a threshold question is whether the three statutes involved in this case impose "punishment" for double jeopardy purposes. HRS § 707-701.5, second degree murder, is a felony punishable by life imprisonment with the possibility of parole. *See* HRS §§ 707-701.5(2) and 706-656(2) (1993). HRS § 134-6(a), carrying or use of a firearm, is a class A felony punishable by twenty years imprisonment. *See* HRS §§ 134-6(e) and 706-659 (1993 & Supp.1996). No one would deny that both life imprisonment and a twenty-year term of imprisonment constitute "punishment."

A more difficult question, however, is whether mandatory minimum terms imposed pursuant to HRS § 706-660.1 constitute "punishment." On its face, HRS § 706-660.1 appears to impose a form of punishment.

Generally, minimum terms of imprisonment are set by the Hawai'i paroling authority. *See* HRS §§ 706–656, 706–659, 706–660, 706–669 (1993). However, under HRS § 706–660.1, minimum terms of imprisonment without the possibility of parole may be imposed by the trial court in certain circumstances. Thus, HRS § 706–660.1 limits the Hawai'i paroling authority's power to grant defendants parole and ensures that certain defendants will remain imprisoned regardless of whether the paroling authority would otherwise release them. Consequently, a mandatory minimum term clearly imposes an additional punishment upon those defendants.

The legislative history of HRS § 706–660.1 also indicates that the legislature intended mandatory minimum terms to constitute punishment. When the legislature originally enacted HRS § 706–660.1, it included a "[f]indings and purpose" section that provided in relevant part:

> The legislature finds that alternative methods of discouraging the use of firearms such as *stronger and more certain penalties* should be instituted. it is the purpose of this Act in view of the increasing use of firearms in criminal actions to provide a deterrent effect against such use for the protection of the people in this State.

1976 Haw. Sess. L. Act 204, § 1, at 493 (emphasis added). *See also* Hse. Conf. Comm. Rep. No. 35, in 1976 House Journal, at 1143; Sen. Conf. Comm. Rep. No. 34–76, in 1976 Senate Journal, at 883.

> In addition,
>
> [w]e have repeatedly recognized that one provision of a comprehensive statute should be read in context of other provisions of that statute and in light of the general legislative scheme. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.

*Kam v. Noh*, 70 Haw. 321, 326–27, 770 P.2d 414, 417–18 (1989) (citation omitted). Because HRS § 706–660.1 is located in chapter 706 of the Hawai'i Penal Code, we may look to other sections in chapter 706 for guidance in determining whether mandatory minimum terms constitute "punishment." Chapter 706 includes sections addressing probation (HRS

§§ 706–620 to 706–631), fines (HRS §§ 706–640 to 706–645), terms of imprisonment for first and second degree murder and attempted first and second degree murder (HRS §§ 706–656, 706–657), indeterminate terms of imprisonment for felonies (HRS §§ 706–659, 706–660), extended terms of imprisonment for felonies (HRS §§ 706–661, 706–662), terms of imprisonment for misdemeanors and petty misdemeanors (HRS § 706–663), and specialized treatment for young adult defendants (HRS § 706–667). Thus, the statutory scheme of chapter 706 deals with sentencing and penalties. Consistent with this scheme, HRS § 706–660.1 should be interpreted as a penalty or punishment.

Therefore, the threshold question posed above has been answered—the three statutes involved in the present case impose "punishment" for double jeopardy purposes. The next question is what standard to apply in multiple punishment cases.

The federal standard interpreting the Double Jeopardy Clause of the United States Constitution was succinctly set forth in *United States v. Lanzi*, 933 F.2d 824 (10th Cir. 1991), as follows:

> [T]he first step in the double jeopardy analysis is to determine whether the legislature intended that each violation be a separate offense. *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). If the legislature, as expressed in the language of the statute or its legislative history, clearly intended cumulative punishment under two different statutory provisions, the imposition of multiple punishment does not violate the Double Jeopardy Clause and the court's inquiry is at an end. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). If the legislative intent is unclear, however, the rule from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), must be applied. *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679. Then, the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each

provision requires proof of a fact which the other does not. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

*Lanzi*, 933 F.2d at 825–26 (internal quotation marks, brackets, and ellipses omitted). *See also United States v. Smith*, 962 F.2d 923, 932 (9th Cir.1992).

We have previously stated that "[w]hen the [federal] interpretation of a provision present in both the United States and Hawai'i Constitutions does not adequately preserve the rights and interests sought to be protected, we will not hesitate to recognize the appropriate protections as a matter of state constitutional law." *State v. Bowe*, 77 Hawai'i 51, 57, 881 P.2d 538, 544 (1994). However, inasmuch as the federal double jeopardy standard in multiple punishment cases appears to protect the rights of defendants adequately, I would not extend the protection of the Hawai'i Constitution's Double Jeopardy Clause beyond the federal standard.

It is true that in *State v. Lessary*, 75 Haw. 446, 865 P.2d 150 (1994), we extended the protection of the Hawai'i Constitution beyond that of the United States Constitution. *Id.* at 457, 865 P.2d at 155. We adopted the "same conduct" test and rejected the current federal standard based on the "same elements" test. *Id.* However, there is a crucial distinction between *Lessary* and the present case—*Lessary* involved successive prosecutions while the present case involves multiple punishments. Successive prosecutions raise significant dangers that are not present in multiple punishment situations. These concerns justify a more rigorous standard for successive prosecution cases.

Successive prosecutions ... whether following acquittals or convictions, raise concerns that extend beyond merely the possibility of an enhanced sentence. The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged. . . . [A] tremendous additional burden is placed on that defendant if he must face each of the charges in a separate proceeding.

*Id.* at 455–56, 865 P.2d at 154–55 (quoting *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled by United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)) (original brackets omitted). Thus, *Lessary* is distinguishable from the present case and does not require us to extend the protections of the Hawai'i Constitution beyond the federal standard in multiple punishment cases.

Furthermore, in multiple punishment cases, we have often avoided distinguishing between the protections afforded by the state and federal constitutions. In *Tuipuapua, supra*, we expressly adopted the federal standard applied in *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), regarding administrative forfeitures. *Tuipuapua*, 83 Hawai'i at 151, 925 P.2d at 321. Similarly, in *Toyomura, supra*, and *State v. Higa*, 79 Hawai'i 1, 897 P.2d 928 (1995), we "did not distinguish between the respective constitutional protections in the context of DUI." *Toyomura*, 80 Hawai'i at 11 n. 5, 904 P.2d at 896 n. 5.

Therefore, I would apply the standard described in *Lanzi, supra*, to multiple punishment cases under both the United States and Hawai'i Constitutions.[5]

Applying this standard to the statutes at issue in the present case, I would hold as follows. Double jeopardy does not prohibit punishment under both HRS § 134–6(a) (car-

---

5. In *State v. Santiago*, 8 Haw.App. 535, 541–42, 813 P.2d 335, 338 (1991), and *State v. Caprio*, 85 Hawai'i 92, 102–03, 937 P.2d 933, 943–44 (App. 1997), the ICA claimed that a different standard applies under the Hawai'i Constitution. In my view, the ICA, in deciding *Santiago* and *Caprio*, improperly relied on dicta in prior cases that did not adequately address the distinction between multiple punishments and successive prosecutions. Therefore, I disagree with the ICA's analysis and would overrule *Santiago* and *Caprio*.

rying or use of a firearm) and the underlying felony (in this case, HRS § 707–701.5, second degree murder). The first step in the analysis is to determine whether the legislature "clearly intended [to allow] cumulative punishment under two different statutory provisions." Based on the discussion in part I.A., *supra*, it is clear that the legislature did intend to allow cumulative punishment for both the firearms offense and the underlying felony. Thus, the "inquiry is at an end" and double jeopardy principles do not prevent a defendant from being punished for both offenses.

Similarly, double jeopardy does not prohibit punishment under both HRS § 707–701.5 (second degree murder) and HRS § 706–660.1 (mandatory minimum terms). HRS § 706–660.1 expressly states that a mandatory minimum term may be imposed "in addition to the indeterminate term of imprisonment provided for the grade of offense." Thus, the legislature clearly intended to allow cumulative punishment. A defendant can be sentenced to both an indeterminate term of life imprisonment with the possibility of parole as well as a mandatory minimum term.

However, a problem is presented by the issue of whether double jeopardy prohibits punishment under both HRS § 134–6(a) (carrying or use of a firearm) and HRS § 706–660.1 (mandatory minimum terms) when the application of both statutes is based on the same underlying felony (in this case, HRS § 707–701.5, second degree murder). Nothing in the language of HRS § 134–6(a) or HRS § 706–660.1 indicates whether the legislature contemplated this possibility. While the statutes do not expressly prohibit cumulative punishments, neither do they *clearly* indicate that cumulative punishments were intended. Similarly, the legislative histories of both statutes are silent and do not provide

*clear* indication that the legislature intended cumulative punishments. Because the legislative intent is unclear, the *Blockburger* test must be applied.

Under *Blockburger*, double jeopardy prohibits cumulative punishments unless "each [statutory] provision requires proof of a fact which the other does not." *Lanzi*, 933 F.2d at 826 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182). It is important to note that, under this test, *each* statute must include an element that the other statute does not possess. Thus, one statute must possess an additional element, and the other statute must possess an additional element as well.

In the present case, to prove a violation of HRS § 134–6(a), the prosecution was required to prove that Jumila:

1. carried on his person or had within his immediate control, or used or threatened to use, a firearm,

2. *knowingly* so carried or had within immediate control, or *intentionally* so used or threatened to use,

3. while engaged in intentionally or knowingly causing the death of another person.[6]

In order to obtain a mandatory minimum term pursuant to HRS § 706–660.1, the prosecution was required to prove that Jumila:

1. had a firearm in his possession or threatened its use or used a firearm,

2. while engaged in intentionally or knowingly causing the death of another person.[7]

It is apparent that HRS § 134–6(a) requires proof that Jumila acted knowingly or intentionally with respect to his conduct in carrying or using the firearm. This additional mental state is not required for HRS § 706–660.1. Thus, HRS § 134–6(a) "requires proof of a fact which the other does not." Howev-

---

6. HRS § 134–6(a) actually states: "while engaged in the commission of a separate felony." However, in the present case, the felony involved is murder in the second degree. "When an offense requires the actual commission of an underlying crime, ... the State is required to prove all of the conduct, attendant circumstances, and results of conduct that comprise the underlying crime." *State v. Israel*, 78 Hawai'i 66, 74, 890 P.2d 303, 311 (1995). Thus, the elements of

murder in the second degree are incorporated as an element of the firearms offense.

7. HRS § 706–660.1 actually states: "while engaged in the commission of the felony [for which the defendant was convicted]." Here, that felony was murder in the second degree. Thus, the elements of murder in the second degree are incorporated as an element of HRS § 706–660.1.

er, the same cannot be said of HRS § 706–660.1. HRS § 706–660.1 does *not* require proof of a fact that HRS § 134–6(a) does not. There is no additional element in HRS § 706–660.1 that HRS § 134–6(a) does not also possess. Both require proof that Jumila was engaged in intentionally or knowingly causing the death of another person. And while the first elements of both statutes utilize slightly different language, they are materially the same. HRS § 134–6(a) requires that the firearm be "carr[ied] on the person or [had] within the person's immediate control." HRS § 706–660.1 requires that the firearm be "in the person's possession." However, possession is defined as follows:

> The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has *direct physical control* over a thing, at a given time, is then in actual possession of it. A person who, *although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing,* either directly or through another person or persons, is then in constructive possession of it.

*Black's Law Dictionary* 1163 (6th ed.1990) (emphases added). Thus, there is no material difference between, on the one hand, "carrying" or "having within one's immediate control" a firearm and, on the other hand, "possessing" a firearm. Both HRS § 134–6(a) and HRS § 706–660.1 include "using" or "threatening to use" a firearm. Therefore, the only material difference between the two statutes is that HRS § 134–6(a) requires proof of an additional mental state with respect to the firearm. It cannot be said that "*each* [statutory] provision requires proof of a fact which the other does not." Consequently, the *Blockburger* test has not been satisfied. I would hold that double jeopardy

principles prevent imposition of cumulative punishments under both HRS § 134–6(a) and HRS § 706–660.1 when the application of both statutes is based on the same underlying felony.[8]

## II. *CONCLUSION*

For the reasons discussed above, I would hold that the Double Jeopardy Clauses of the United States and Hawai'i Constitutions prohibit imposing both an indeterminate twenty-year term of imprisonment and a fifteen-year mandatory minimum term against Jumila. Therefore, I would vacate the mandatory minimum term and remand for resentencing without the mandatory minimum. However, inasmuch as I see no reason for interfering with Jumila's convictions, either based on included offense or double jeopardy principles, I would affirm his convictions of murder in the second degree and carrying or use of a firearm.

---

**8.** In *State v. Ambrosio,* 72 Haw. 496, 824 P.2d 107, *reconsideration denied,* 72 Haw. 616, 829 P.2d 859 (1992), the defendant was convicted, *inter alia,* of kidnapping and violating HRS § 134–6(a). The trial court imposed mandatory minimum terms under HRS § 706–660.1 for both convictions. In a terse opinion by Justice Padgett, this court vacated the mandatory minimum term for the firearms offense because the legislature did not intend to impose two mandatory minimum terms. However, in *Ambrosio,* this court did not address the issue of whether cumulative punishments under HRS § 134–6(a) and HRS § 706–660.1 based on the same underlying felony violate double jeopardy principles. To the extent that *Ambrosio* permitted imposition of a mandatory minimum term based on the kidnapping offense when the same kidnapping offense provided the basis for the firearms offense, I would overrule *Ambrosio.*