STATE OF HAWAII, Plaintiff-Appellee, Cross-Appellant, *v.* FRED ALBERT DECENSO, Defendant-Appellant, Cross-Appellee

NO. 8764

(CRIMINAL NO. 56221)

APRIL 3, 1984

BURNS, C. J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY BURNS, C. J.

Defendant Fred Albert DeCenso (DeCenso) appeals from a jury conviction of sex abuse in the first degree.[1] He alleges that the lower court erred in: 1) admitting into evidence items seized from him; 2) admitting into evidence the complainant's identification of him; and 3) refusing to allow him to call the complainant as his own witness. We affirm.

The State of Hawaii (State) cross-appeals from the order granting DeCenso's motion to dismiss count I of the indictment which charged him with kidnapping.[2] We reverse.

On July 14, 1981 a man came up behind a 12-year-old girl (complainant) as she was walking on the grounds of an Oahu high school. He placed his hands over her mouth and told her not to say anything or she would be hurt. Then he placed her face down on the ground and tied her hands with a piece of cord. After turning her over, he sexually molested her for approximately one minute before running away. Immediately after the incident the complainant described her assailant to Officer Gilfillan, the investigating officer, as "a forty to fifty year old Caucasian male, gray hair, wearing prescription sunglasses, light blue Aloha shirt, dark blue shorts, approximately five foot 6 inches tall, medium to heavy build." She also stated that as she was running home after the incident she saw a silver Honda-type car make a sharp U-turn on the road adjacent to the school grounds. She gave essentially the same description to an Officer Kawaa the next day. Additionally, she told Officer Kawaa that her assailant was "clean shaven."

Three days later, on July 17, 1981, a silver Ford Fiesta automobile was observed by Officer Chun as it made a U-turn in the vicinity of the alleged assault. Officer Chun testified that he observed the Fiesta slow down as it passed two girls. The driver

---

[1] Section 707-736(2), Hawaii Revised Statutes (HRS) (1976) provides: "Sexual abuse in the first degree is a class C felony."

[2] Subsections (2) and (3) of 707-720, HRS (1976), provides:

(2) Except as provided in subsection (3), kidnapping is a class A felony.

(3) In a prosecution for kidnapping, it is a defense which reduces the offense to a class B felony that the defendant voluntarily released the victim, alive and not suffering from serious bodily injury, in a safe place prior to trial.

parked his car, got out, went behind some bushes while the two girls walked by, and then briefly followed them. After the driver got back into his car and drove off, Officer Chun called assisting units and established a surveillance of the car. During the next fifty minutes, the car stayed within a two-mile radius of the school, returning there twice. The officers then stopped the car and held the driver for identification.

The complainant was driven past the scene and positively identified DeCenso as her assailant. This show-up identification was conducted with DeCenso standing between one non-Caucasian plain-clothed policeman and one uniformed policeman described by Officer Chang as "a local male ... [d]ark complected, dark hair[.]" DeCenso, a Caucasian, was then 39 years old, five feet seven and a half inches tall, approximately 175 pounds, and wore a full moustache.

After the show-up identification, DeCenso was arrested and searched. An officer recovered a piece of cord from DeCenso's coat pocket which matched the cord the assailant had used to tie complainant's hands.

On August 7, 1981 an eight-person photographic line-up was conducted and the complainant again identified DeCenso as her assailant. Seven of the eight persons pictured, including DeCenso, wore moustaches.

On October 21, 1981 the Oahu Grand Jury returned a two-count indictment charging DeCenso with kidnapping under Hawaii Revised Statutes (HRS) § 707-720(1)(d) (count I) and sexual abuse in the first degree under HRS § 707-736(1)(a) (count II). On February 16, 1982 the court denied DeCenso's motions to suppress the in-court eyewitness identification by the complainant and the cord taken from his pocket. These motions were made on the basis that the initial detention of DeCenso was unconstitutional; that the pretrial show-up procedure was impermissibly suggestive; and that DeCenso was denied the right to have counsel present during the show-up and photographic line-up identification. On March 15, 1982, before the jury was impaneled, DeCenso moved on double jeopardy grounds to force the State to elect between counts I and II. On March 18, 1982, after the State rested but before DeCenso rested, the court obtained DeCenso's permission to treat the motion as a motion to dismiss based upon HRS § 701-109(1)(a).

Thereupon, the court orally granted the motion by dismissing the kidnapping count. A written order was subsequently filed.

At trial the complainant testified that DeCenso was her assailant although she had not noticed that her assailant wore a moustache at the time that he attacked her. Following the State's case-in-chief, the court upheld the State's motion to deny DeCenso's request to recall the complainant as his own witness.

DeCenso was sentenced to imprisonment for five years.

## I. VALIDITY OF THE STOP

DeCenso contends that his initial stop by the police on July 17, 1981 violated the fourth amendment of the United States Constitution and article I, section 7 of the Hawaii State Constitution. If so, any confrontation identification and evidence seized incident to the subsequent arrest must be suppressed as fruits of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The standard applicable in determining whether DeCenso's constitutional rights were violated when the police stopped him as he was driving his automobile is set forth in *State v. Bennett,* 62 Haw. 59, 62, 610 P.2d 502, 505 (1980), as follows:

> [I]n order for a police officer to conduct a valid stop . . . , he must have observed specific conduct on the part of the person whom he is about to stop. . . , or have reliable information from which he may reasonably infer that criminal activity is afoot. . . .
> And the test of whether the officer's conduct of intrusion was reasonable is to be determined by whether the facts known to the officer, judged against an objective standard, would warrant a man of reasonable caution to believe that the action taken was appropriate.
>
> In determining the reasonableness of the officer's conduct, the information which he has on hand is vital, but he is not limited to his own personal knowledge. Where police officers are acting in concert and are keeping each other informed of the progress of a particular investigation, the knowledge of each is deemed the knowledge of all. *State v. Barnes,* 58 Haw. 333, 336, 568 P.2d 1207, 1210 (1977). Also what is reasonable depends "on a balance between the public interest and the indivi-

 

dual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

In this case the actions of the driver before the stop, coupled with the information obtained from the complainant, were sufficient to justify the investigative stop. *Bennett, supra,* 62 Haw. at 64, 610 P.2d at 506. *See also State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971).

## II. ADMISSIBILITY OF THE "SHOW-UP" IDENTIFICATION

DeCenso contends that the initial show-up identification was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification and that the ensuing photographic line-up and in-court identification were tainted by the initial streetside identification procedure.

The standard for admissibility of eyewitness identifications is the test set forth in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which was most recently reiterated by this court in *State v. Tuua,* 3 Haw. App. 287, 289, 649 P.2d 1180, 1183 (1982). In *Tuua* we stated:

> When the defendant challenges admissibility of eyewitness identification on the grounds of impermissibly suggestive pretrial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) whether the procedure was impermissibly or unnecessarily suggestive; and (2) if so, whether, upon viewing the totality of the circumstances, such as opportunity to view at the time of the crime, the degree of attention, the accuracy of prior description, the level of certainty, and the elapsed time, the witness' identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the jury. [Citations omitted.]

While the questions of suggestiveness and reliability may involve determinations of fact, they are ultimately questions of law freely reviewable by this court. *Smith v. Perini,* 723 F.2d 478 (6th Cir. 1983).

Show-up identifications are inherently suggestive, *see Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and we

agree with the lower court that the pretrial identification procedure in this case was impermissibly suggestive. However, the record supports the lower court's conclusion that, although the show-up identification procedure was impermissibly suggestive, it did not create a likelihood of misidentification. The totality of circumstances indicates that the witness' show-up identification was sufficiently reliable so as to justify presentation to the jury. "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification." *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

### III. ADMISSIBILITY OF THE PHOTOGRAPHIC LINE-UP AND IN-COURT IDENTIFICATION

Having held that the show-up identification was not constitutionally improper, we need not address DeCenso's argument that the subsequent photographic line-up and in-court identification were tainted by the show-up procedure. However, DeCenso also contends that the photographic line-up was impermissibly suggestive. The lower court concluded that it was not, and we agree.

DeCenso further contends that he was denied his constitutional right to counsel at both the show-up and the photographic line-up. The contention that there is a constitutional right to counsel at pretrial photographic displays was denied in *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). The Hawaii Supreme Court has not given defendants any greater right in this area. It has held "that the state constitution provides no right to counsel at a post-arrest photographic display." *State v. Malani,* 59 Haw. 167, 578 P.2d 236 (1978). Likewise, the contention that there is a constitutional right to counsel at a preindictment identification procedure has no merit. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *State v. Masaniai,* 63 Haw. 354, 628 P.2d 1018 (1981).

### IV. DENIAL OF RIGHT TO CALL WITNESS

DeCenso contends that he was denied the right to compulsory process in violation of the due process clause of the fourteenth amendment of the United States Constitution and article I, section

14 of the Hawaii State Constitution. We disagree.

Compulsory process is "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967). However, compulsory process "does not guarantee the right to compel attendance and testimony of all potential witnesses absolutely." *State v. Mitake,* 64 Haw. 217, 224, 638 P.2d 324, 329 (1981). There is no constitutional violation "unless the witness denied to defendant could have produced relevant and material testimony benefiting the defense[.]" *Id.*

The lower court found that DeCenso's counsel had thoroughly examined the witness on all the pertinent issues. In refusing to allow further examination of the witness, the court apparently agreed with the prosecutor that additional examination would constitute undue harassment.

We agree with the lower court that all of the issues were extensively covered during the State's case-in-chief. The record indicates that DeCenso's counsel cross-examined the complainant extensively (52 transcript pages) during the State's case-in-chief. Furthermore, the offer of proof made by DeCenso's counsel indicated that further examination would only serve to impeach the witness a second time. The right to produce witnesses in one's favor does not encompass undue harassment of witnesses, particularly where no substantive evidence will be introduced. *United States v. Raineri,* 670 F.2d 702 (7th Cir. 1982), *cert. den. sub. nom. Raineri v. United States,* 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982).

## V. KIDNAPPING

The State charged DeCenso with kidnapping under HRS § 707-720(1)(d)[3] and sexual abuse in the first degree under HRS 707-736(1)(a).[4]

---

[3] Section 707-720(1)(d), HRS (1976), provides:

*Kidnapping.* (1) A person commits the offense of kidnapping if he intentionally restrains another with intent to:

(d) Inflict bodily injury upon him or subject him to a sexual offense[.]

[4] Section 707-736(1)(a), HRS (1976), provides:

*Sexual abuse in the first degree.* (1) A person commits the offense of sexual abuse in the first degree if:

(a) He intentionally, by forcible compulsion, has sexual contact with another or causes another to have sexual contact with him[.]

134

DeCenso's counsel argued to the lower court that, based on the constitutional prohibition against double jeopardy, DeCenso could not be charged and convicted of both kidnapping and sexual abuse in the first degree because both arose out of the same facts.

The lower court did not address this constitutional issue because it found that the included offense doctrine of HRS §§ 701-109(1)(a) was applicable and, therefore, the court dismissed the kidnapping charge on statutory grounds.

The relevant provisions of HRS § 701-109 (1976) state as follows:

Method of prosecution when conduct establishes an element of more than one offense. (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He may not, however, be convicted of more than one offense if:

(a) One offense is included in the other, as defined in subsection (4) of this section:

\* \* \* \* \*

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

\* \* \* \* \*

Section 701-109(1), HRS, is a restriction on the State's power to convict a defendant of two different offenses involving the same conduct. The defendant may not be convicted of both

charged offenses if one is an "included" offense as defined by HRS § 701-109(4).[5]

In the instant case, DeCenso was charged with two offenses. The question is whether he can be convicted of both. The lower court answered no because it concluded that the same acts constituted both crimes. We answer yes because different acts by DeCenso, though closely related in time, constituted different crimes.

In *State v. Pia,* 55 Haw. 14, 19, 514 P.2d 580, 584-85 (1973), the supreme court said:

> Where, however, two different criminal acts are at issue, supported by different factual evidence even though separated in time by only a few seconds, one offense by definition cannot be "included" in the other.
>
> *    *    *    *
>
> [W]here a defendant in the context of one criminal scheme or transaction commits several acts independently violative of one or more statutes, he may be punished for all of them if charges are properly consolidated by the State in one trial.

Here, DeCenso completed the act of kidnapping when he placed his hands over the victim's mouth, threatened her with bodily harm, placed her face down on the ground and tied her hands. Thereafter, he sexually abused her. The fact that the kidnapping continued during the sexual abuse did not cause the kidnapping to be an included offense of the sexual abuse offense.

The prohibition contained in the fifth amendment of the United States Constitution and article I, section 10 of the Hawaii State Constitution is that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy[.]" If two different offenses are charged and each involves different acts, they are not the "same offense" and do not implicate the constitutional prohibition against double jeopardy. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932).

Moreover, the fact that the lower court dismissed count I after the jury was impaneled does not bar a revival of count I. Although jeopardy attaches when the jury is impaneled, *Crist v. Bretz,* 437

---

[5] The defendant may be charged and tried but not convicted of both offenses. If both are submitted to the jury, the jury may find the defendant guilty of either.

U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), dismissal of a charge after jeopardy attaches does not always bar further prosecution on the same charge. It depends upon the basis for the dismissal. Where, as here, a defendant succeeds during trial in having a charge against him dismissed without submitting the question of his guilt or innocence of that charge to the judge or jury, the double jeopardy clause does not bar a second trial of that charge. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), on remand 579 F.2d 1013 (6th Cir. 1978), *cert. denied* 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979), *reh. denied* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978). *See State v. Marzo,* 64 Haw. 395, 641 P.2d 1338 (1982).

Accordingly, we affirm the conviction of sexual abuse in the first degree. We reverse the dismissal of the kidnapping charge and remand for further proceedings consistent with this opinion.

*David Bettencourt* for defendant-appellant, cross-appellee.

*Peter Esser,* Deputy Prosecuting Attorney, for plaintiff-appellee, cross-appellant.•