967 P.2d 221

STATE of Hawai'i, Petitioner–
Plaintiff–Appellant,

v.

Jorge AKE, Respondent–
Defendant–Appellee.

No. 20770.

Supreme Court of Hawai'i.

Sept. 24, 1998.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, on the briefs, for petitioner-plaintiff-appellant.

Gary A. Modafferi, on the briefs, Honolulu, for respondent-defendant-appellee.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

We granted certiorari to review the summary disposition order of the Intermediate Court of Appeals (ICA) filed on July 21, 1998. The ICA affirmed the circuit court's findings of fact, conclusions of law, and order granting respondent-defendant-appellee Jorge Ake's motion to dismiss. Petitioner-plaintiff-appellant State of Hawai'i (the prosecution) challenges the ICA's and the circuit court's decisions. For the following reasons, we reverse the ICA's summary disposition order, vacate the circuit court's order, and remand for further proceedings.

## I. BACKGROUND

The following facts were entered into the record by stipulation:

1. Hawai'i Revised Statutes (HRS) § 134-6 (Supp.1997) provides in relevant part:

[P]lace to keep firearms; loaded firearms; penalty . . . .

. . . .

(c) Except as provided in sections 134-5 [possession by licensed hunters and minors; target shooting; game hunting] and 134-9 [licenses to carry], all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or

On October 19, 1995 at approximately 8:40 p.m., Reynold Hirazumi, owner of Ala Moana Pawn Shop, exited his pawn shop located on Piikoi Street. While he was locking the deadbolt lock on his door, Reynold [saw] a male sitting on the steps of the pawn shop located next to his pawn shop. The male had a hood drawn over his face and appeared to be wearing camouflage paint on his face. This male then approached Reynold and told him to open the door. At this point, Reynold recognized the male's voice and was able to see his face. The male was Jorge Ake, a former employee who worked for Reynold at the pawn shop. Reynold also saw Jorge Ake, the defendant, holding a gun.

After seeing the gun, Reynold ran across Piikoi to the parking lot located in front of Tower Record. From the parking lot, Reynold looked back and saw the defendant walking down Hopaka Street. Reynold then called the police and reported this incident.

At approximately 8:42 p.m., on October 19, 1995, Officer Keith Tanaka was on routine patrol in the Central Honolulu area. As he was driving down the Ala Moana Shopping Center Keeaumoku Street ramp, he sees a silver colored multi-purpose vehicle commit a number of traffic violations. Officer Tanaka pulls the vehicle over and approaches the driver. Officer Tanaka notices that the driver has black grease smeared on his face, and the driver tells Officer Tanaka that he has a gun hidden in his jacket pocket. The driver of the vehicle was the defendant, Jorge Ake.

The defendant is subsequently charged with Place to Keep Loaded Firearm[1] and

sojourn, or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

. . . .

(e). . . . Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134-9 shall be guilty of a class B felony. Any person violating this section by car-

Terroristic Threatening in the First Degree[2] on October 27, 1995. This case started jury trial on July 9, 1996. During trial, on July 10, 1996, after the jury was impaneled, the defendant filed a motion to dismiss the Place to Keep Loaded Firearm charge, alleging that the complaint insufficiently provided all the elements of the offense. [The circuit court] dismissed this charge based on the defendant's motion. This charge was dismissed without prejudice.

Trial continued on the first degree terroristic threatening charge, and the jury eventually acquitted Ake.

On November 12, 1996, Ake was recharged with place to keep firearms. On January 7, 1997, Ake filed a motion to dismiss based on alleged violations of HRS § 701–109 and the United States and Hawai'i Constitutions. A hearing on the motion was held in the circuit court on January 21, 1997, and evidence was entered by stipulation.[3] On May 16, 1997, the circuit court entered the following findings of fact, conclusions of law, and order:

> rying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a class C felony.

2. HRS § 707–715 (1993) provides:

> **Terroristic threatening, defined.** A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:
>   (1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; or
>   (2) With intent to cause, or in reckless disregard of the risk of causing evacuation of a building, place of assembly, or facility of public transportation.

> HRS § 707–716 (1993) provides:
> **Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
>   (a) By threatening another person on more than one occasion for the same or a similar purpose; or
>   (b) By threats made in a common scheme against different persons; or
>   (c) Against a public servant, including but not limited to an educational worker, who for the purposes of this section shall mean an administrator, specialist, counselor, teacher, or other employee of the department of education, or a volunteer as defined by section 90–1, in a school program, activity,

Defendant AKE was acquitted by jury verdict of a terroristic threatening charge stemming out of a confrontation with his former employer. The facts of that charge necessarily involved use of the same firearm that was alleged to have occurred one or two minutes prior. As a direct result of that confrontation, Defendant's vehicle was stopped because of an all points bulletin released immediately after the confrontation.

Defendant proceed[ed] to trial and was acquitted of the Terroristic Threatening in the First Degree Count. The Place to Keep Count was dismissed prior to verdict. The State now seeks prosecution on the dismissed count. The Court finds jeopardy has attached to the new charge as said charge was: (1) Based on the same conduct and arising from the same episode as the terroristic threatening charge that Defendant had been adjudged not guilty.

Further prosecution would violate Sections 701–109, 701–111(1)(b), the United

> or function that is established, sanctioned, or approved by the department of education, or a person hired by the department of education on a contractual basis and engaged in carrying out an educational function; or
>   (d) With the use of a dangerous instrument.
> (2) Terroristic threatening in the first degree is a class C felony.

3. At the hearing on January 21, 1997, there was significant disagreement as to whether the terroristic threatening charge and the place to keep firearms charge were based on the same episode and/or the same conduct. The record on this question is unclear. It appears that Officer Tanaka may have known about the incident at the pawn shop during his traffic stop of Ake. Therefore, it is at least arguable that this case involved a single episode. Furthermore, Ake was obviously carrying a firearm when he showed the gun to Hirazumi at the pawn shop. Thus, one could argue that the two offenses were based on the same conduct. On the other hand, the terroristic threatening was completed at the pawn shop, while the place to keep firearms offense continued until Ake was arrested by Officer Tanaka. Therefore, it may be possible to separate the conduct supporting each offense. In any event, it is unnecessary to decide these issues here. Even if we assume *arguendo* that this case involved a single episode or the same conduct, retrial is not barred, under the circumstances of this case, for the reasons stated *infra*.

States and Hawaii State Constitutions, and the holding in *State v. Servantes*, 72 Haw. 35, 804 P.2d 1347 (1991).

Accordingly, **IT IS HEREBY ORDERED** that the Court finds the following [sic] findings of fact and conclusions of law and Order granting Defendant's Motion to Dismiss for Violation of Double Jeopardy Clause and Section 701–109 *H.R.S.* It is further ordered that this case be dismissed with prejudice.

The prosecution filed a timely notice of appeal on June 16, 1997. On July 21, 1998, the ICA summarily affirmed the circuit court. On July 31, 1998, the prosecution filed an application for a writ of certiorari, which this court granted.

## II. *DISCUSSION*

The circuit court cited the following authorities in its order granting Ake's motion to dismiss: HRS § 701–109; HRS § 701–111(1)(b); the United States Constitution; the Hawai'i Constitution; and *State v. Servantes*, 72 Haw. 35, 804 P.2d 1347 (1991).

Based on the circuit court's citation to *Servantes* and the motions and memoranda submitted by the parties, we can determine the circuit court's rationale. In *Servantes*, we reversed one of the defendant's drug convictions based on HRS §§ 701–109(2) [4] and 701–111(1)(b).[5] *Servantes*, 72 Haw. at 37–40, 804 P.2d at 1348–49. Therefore, it appears that, notwithstanding some apparent typographical errors, the circuit court's order was based on HRS §§ 701–109(2) and 701–111(1)(b). In addition, inasmuch as Ake's motion referred to double jeopardy, it appears that the circuit court's order was also based on the Double Jeopardy Clauses of the United States and Hawai'i Constitutions.[6] In summary, the circuit court apparently dismissed Ake's place to keep firearms charge based on: (1) the statutory requirements of HRS §§ 701–109(2) and 701–111(1)(b); and (2) the Double Jeopardy Clauses of the United States and Hawai'i Constitutions.

### A. *The Double Jeopardy Clauses of the United States and Hawai'i Constitutions*

The circuit court apparently concluded that the Double Jeopardy Clauses of the United States and Hawai'i Constitutions barred retrial of Ake's place to keep firearms charge.

We have often recognized that double jeopardy is implicated in three types of situations. "Double jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Quitog*, 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997) (quoting *State v. Ontiveros*, 82 Hawai'i 446, 450, 923 P.2d 388, 392 (1996)). *See also North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The first two situations deal with successive prosecutions, while the third situation deals with multiple punishments.

In the successive prosecutions context, this court has adopted the "same conduct" test as

4. HRS § 701–109(2) (1993) provides:
 Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

5. HRS § 701–111 (1993) provides in relevant part:
 **When prosecution is barred by former prosecution for a different offense.** Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:

(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701–110(3) and the subsequent prosecution is for:
 . . . .
 (b) Any offense for which the defendant should have been tried on the first prosecution under section 701–109 unless the court ordered a separate trial of the offense[.]

6. The fifth amendment to the United States Constitution provides in relevant part: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." Article I, section 10 of the Hawai'i Constitution provides in relevant part: "No person shall ... be subject for the same offense to be twice put in jeopardy."

the general standard under the Double Jeopardy Clause of the Hawai'i Constitution. In *State v. Lessary*, 75 Haw. 446, 865 P.2d 150 (1994), we held that, "[u]nder the 'same conduct' test, prosecution of [a] charge is barred if the State, to establish the conduct element of [that offense], will prove acts of the defendant on which the State relied to prove the conduct element of [another] offense for which [the defendant] had already been prosecuted." *Id.* at 460, 865 P.2d at 157.

The United States Supreme Court, however, has adopted the "same elements" test, originally described in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as the standard under the Double Jeopardy Clause of the United States Constitution. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and returning to the "same elements" test). "[T]he test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180.[7]

In the present case, Ake is clearly invoking the double jeopardy protection against successive prosecutions rather than the protection against multiple punishments. Ake is objecting to the possibility of being retried on the place to keep firearms count after having already been prosecuted in a prior proceeding. Thus, successive prosecutions are at issue in this case, and the "same conduct" and "same elements" tests would ordinarily control.

■ It appears, however, that a specific double jeopardy rule governs the particular situation presented here. It is well settled that, when a defendant deliberately seeks termination of his or her proceedings on a basis unrelated to factual guilt or innocence, double jeopardy principles do not bar retrial.

*See United States v. Scott*, 437 U.S. 82, 98–99, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Lee v. United States*, 432 U.S. 23, 30–31, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *State v. Wells*, 78 Hawai'i 373, 377, 894 P.2d 70, 74, *reconsideration denied*, 78 Hawai'i 474, 896 P.2d 930 (1995); *State v. DeCenso*, 5 Haw.App. 127, 136, 681 P.2d 573, 580 (1984).[8]

■ The facts in *Scott* are remarkably similar to the facts in the present case. In *Scott*, the defendant was charged in a three-count indictment with distribution of various narcotics. *Scott*, 437 U.S. at 84, 98 S.Ct. 2187. The defendant moved to dismiss the first two counts, and the trial court eventually granted the motion. *Id.* The third count was submitted to the jury, and the jury found the defendant not guilty. *Id.* The government appealed the dismissal of the first two counts; however, the United States Court of Appeals for the Sixth Circuit concluded that any further prosecution of the defendant was barred by the Double Jeopardy Clause and dismissed the appeal. *Id.* The Supreme Court reversed the Sixth Circuit for the following reason:

> We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause.... [W]e conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.

*Id.* at 98–99, 98 S.Ct. 2187. Thus, when one or more counts of a multi-count indictment or complaint are terminated on the defendant's own motion and on a basis unrelated to factual guilt or innocence, further proceedings on those counts, including retrial, are permissible.

7. It should be noted that federal courts have applied the *Blockburger* test in multiple punishment situations as well. *See, e.g., United States v. Smith*, 962 F.2d 923, 932 (9th Cir.1992); *United States v. Lanzi*, 933 F.2d 824, 825–26 (10th Cir. 1991).

8. Double jeopardy principles do, however, bar retrial if a mistrial request is provoked by prosecutorial misconduct. *See Scott*, 437 U.S. at 94, 98 S.Ct. 2187; *Quitog*, 85 Hawai'i at 141 n. 22, 142, 938 P.2d at 572 n. 22, 573; *State v. Tuipuapua*, 83 Hawai'i 141, 148, 925 P.2d 311, 318 (1996).

Not only is this rule applicable under the United States Constitution, but it is also applicable under the Hawai'i Constitution. This court's decision in *Wells* relied heavily on *Scott*. *See Wells*, 78 Hawai'i at 376–77, 894 P.2d at 73–74. In *DeCenso*, the ICA also relied on *Scott* in addressing double jeopardy principles. *See DeCenso*, 5 Haw.App. at 136, 681 P.2d at 580. Neither *Wells* nor *DeCenso* distinguished between the federal and state constitutions in applying this rule. Therefore, it appears that the rule in *Scott* is applicable under both the Hawai'i and United States Constitutions.

■ In the present case, Ake was originally charged, in a single two-count complaint, with both terroristic threatening in the first degree and place to keep firearms. However, upon Ake's own motion to dismiss, the circuit court dismissed the place to keep firearms count because it failed to allege all the elements of the offense. Thus, the place to keep firearms count was dismissed on a basis unrelated to factual guilt or innocence. Therefore, the rule in *Scott* and *Wells* controls the present case, and retrial is not barred.

For these reasons, retrial on the place to keep firearms charge is not barred by the Double Jeopardy Clauses of the United States and Hawai'i Constitutions.

### B. *HRS §§ 701–109(2) and 701–111(1)(b)*

The circuit court also concluded that retrial on Ake's place to keep firearms charge was barred by the statutory requirements of HRS §§ 701–109(2) and 701–111(1)(b).[9]

In *Servantes, supra*, the police discovered a plastic bag containing marijuana in the defendant's car. *Id.* at 36, 804 P.2d at 1348.

The car was towed to the police station. *Id.* at 37, 804 P.2d at 1348. Four days later, after obtaining a search warrant for the car, the police discovered cocaine and drug paraphernalia. *Id.* The defendant was charged with promoting a detrimental drug in the third degree, a misdemeanor, and then separately indicted for promoting a dangerous drug in the third degree and possession with intent to use drug paraphernalia, both felonies. *Id.* The defendant pled no contest to the misdemeanor charge and was convicted. *Id.* Then the defendant argued that further proceedings on the felony charges were barred by HRS §§ 701–109(2) and 701–111(1)(b). *Id.* The trial court rejected this argument; however, on appeal, this court reversed the trial court. This court held that the misdemeanor charge and the felony charges were based on the same criminal episode and that, because of the defendant's conviction on the misdemeanor charge, the State was barred from prosecuting him on the felony charges. *Id.* at 39, 804 P.2d at 1349.

In the present case, the circuit court dismissed Ake's place to keep firearms charge, relying on *Servantes*. However, just as in the double jeopardy analysis described in section II.A, *supra*, it appears that a specific rule governs the particular situation in this case.

■ In *State v. Wacker*, 70 Haw. 332, 770 P.2d 420 (1989), *overruled on other grounds by State v. Dow*, 72 Haw. 56, 806 P.2d 402 (1991),[10] the defendant was charged with driving under the influence (DUI) under both HRS §§ 291–4(a)(1) and 291–4(a)(2). *Id.* at 332, 770 P.2d at 421. The two charges were tried together, pursuant to HRS § 701–

---

9. For the text of HRS §§ 701–109(2) and 701–111(1)(b), *see supra* notes 4 and 5.

10. *Wacker* appeared to suggest that HRS §§ 291–4(a)(1) and 291–4(a)(2) constituted two separate offenses. However, in *Dow*, 72 Haw. at 61, 806 P.2d at 405, and *State v. Grindles*, 70 Haw. 528, 531, 777 P.2d 1187, 1190 (1989), this court held that the DUI statute provides two alternative means of proving a single offense. Thus, in *Dow*, this court overruled *Wacker* "to the extent" that it suggested HRS §§ 291–4(a)(1) and 291–4(a)(2) constituted two separate offenses. *Dow*, 72 Haw. at 61, 806 P.2d at 405.

Nevertheless, it appears that the central holding of *Wacker*, interpreting HRS §§ 701–109(2) and 701–111(1), is still valid, at least in relation to offenses other than DUI. In *Grindles*, this court stated that the suggestion in *Wacker* that HRS §§ 291–4(a)(1) and 291–4(a)(2) are separate offenses was merely dictum. *Grindles*, 70 Haw. at 531 n. 2, 777 P.2d at 1190 n. 2. Inasmuch as the suggestion was merely dictum, it appears that the central holding of *Wacker* involved the interpretation of HRS §§ 701–109(2) and 701–111(1) and that this holding remains intact.

109(2). *Id.* At trial, the defendant was acquitted of the HRS § 291–4(a)(1) charge; however, the jury was unable to reach a verdict on the HRS § 291–4(a)(2) charge. *Id.* The lower court concluded that, under HRS § 701–111(1), it was obligated to dismiss the HRS § 291–4(a)(2) charge rather than conduct a retrial. *Id.* On appeal, this court reversed the lower court for the following reasons:

> The construction placed by the court below, on HRS § 701–111(1), leads to an untenable result, which frustrates the purpose of HRS § 701–109(2).
>
> HRS § 701–111 obviously was intended to deal with a new prosecution, commenced after a termination of a prior prosecution, and terminated as defined in that section. It was not intended to deal with a situation where there were multiple counts under different statutes, in an original prosecution, which were tried together as required by statute, resulting in an acquittal on some of the counts, and a mistrial on others.

*Id.* at 333, 770 P.2d at 421–22. Therefore, *Wacker* adopted a rule under HRS §§ 701–109(2) and 701–111(1)(b) similar to the rule under the federal and state Double Jeopardy Clauses. When a defendant is charged in a single indictment or complaint and one or more counts are terminated on a basis unrelated to factual guilt or innocence, retrial is not barred.[11]

This rule is supported by the plain language of HRS §§ 701–109(2) and 701–111(1)(b). HRS § 701–109(2) expressly states that it is subject to an exception described in subsection (3). HRS § 701–109(3) (1993) provides that "the court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires." HRS § 701–111(1)(b) contains a similar exception. Under HRS § 701–111(1)(b), prosecution is barred for an offense that should have been joined under HRS § 701–109, "unless the court ordered a separate trial of the offense[.]"

■ In the present case, the defendant moved for dismissal. As a result, the circuit court entered an order dismissing the place to keep firearms charge without prejudice. Such an order clearly constitutes an implied severance order. By dismissing one charge, but allowing the other charge to continue, the circuit court, in effect, severed the two charges. Inasmuch as the place to keep firearms charge was dismissed *without prejudice*, the circuit court apparently contemplated retrial on that offense. "[J]ustice so require[d]" the order because the place to keep firearms charge was technically defective in that it did not state all the elements of the offense. Therefore, an order dismissing a charge, without prejudice, in a multi-charge indictment or complaint constitutes an order for separate trials under HRS §§ 701–109(2) and 701–111(1)(b).

Finally, HRS §§ 701–110(4) and 701–111(3) also provide guidance on the issue in question. "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993). HRS § 701–111(3) (1993) provides that prosecution for an offense is barred by a former prosecution for another offense if "[t]he former prosecution was improperly terminated, as improper termination is defined in section 701–110(4), and the subsequent prosecution is for an offense for which the defendant could have been convicted had the former prosecution not been improperly terminated." HRS § 701–110(4) provides in relevant part:

> [T]here is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the first witness is sworn

---

**11.** It is true that *Wacker* involved a mistrial, while the present case involves a dismissal based on a defective charge. However, in *Lee, supra,* the United States Supreme Court noted that the trial court's order granting dismissal based on a defective charge was "functionally indistinguishable from a declaration of mistrial." *Id.* at 31,

97 S.Ct. 2141. Both involve "termination of the proceedings ... on a basis unrelated to factual guilt or innocence[.]" *Wells,* 78 Hawai‘i at 377, 894 P.2d at 74 (quoting *Scott,* 437 U.S. at 98–99, 98 S.Ct. 2187). Therefore, the rule in *Wacker* applies to the present case.

but before verdict. Termination under any of the following circumstances is not improper:

  (a) The defendant consents to the termination or waives, by motion to dismiss or otherwise, the defendant's right to object to the termination.

  (b) The trial court finds the termination is necessary because:

  . . . .

  (iv) The jury is unable to agree on a verdict[.]

Thus, a dismissal on the defendant's motion or a mistrial based on a failure to agree on a verdict do not constitute improper termination, and prosecution is not barred on that basis. It is not clear whether HRS §§ 701–110(4) and 701–111(3) are directly applicable to this case because the record does not indicate whether the place to keep firearms charge was dismissed "after the first witness [was] sworn[.]" Nevertheless, these provisions do suggest that allowing retrial after a dismissal unrelated to factual guilt or innocence is not inconsistent with HRS § 701–111.[12]

Therefore, HRS §§ 701–109(2) and 701–111(1)(b) do not bar retrial on Ake's place to keep firearms charge.

### III. CONCLUSION

For the foregoing reasons, we reverse the ICA's summary disposition order; vacate the circuit court's findings of fact, conclusions of law, and order granting Ake's motion to dismiss; and remand for further proceedings.

12. It should also be noted that there is nothing factually inconsistent with acquitting Ake of terroristic threatening but convicting him of place to keep firearms. HRS § 701–111(2) (1993) provides that a prosecution is barred if a former prosecution "was terminated by an acquittal or by a final order or judgment of the defendant which has not been set aside, reversed, or vacated and which acquittal, final order, or judgment necessarily required a determination inconsistent with a fact which must be established for the conviction of the second offense." The jury could have concluded that, while Ake was indeed carrying a gun, he did not threaten Hirazumi or have the necessary intent or reckless disregard to constitute terroristic threatening. If Ake carried the gun without a license and without properly confining it, he could be convicted of place to keep firearms, regardless of whether or not he committed terroristic threatening.